## SUPERIOR COURT OF BALTIMORE CITY.

Filed December 15, 1913.

PHILLIPS LEE GOLDSBOROUGH, ET AL.,

VS.

THE POSTAL TELEGRAPH-CABLE COMPANY.

*Leon E. Greenbaum* for plaintiffs.
*Lemmon and Clotworthy* for defendant.

DAWKINS, J.—

This action is brought by the State Roads Commission for and on behalf of the State of Maryland to recover certain accrued rentals or income for the use of the Conowingo Bridge for the conveyance of the wires of the defendant company over said bridge, on the theory that the said bridge company having charged and collected from the said defendant company for the purposes stated the said rentals, and the said bridge with the said rentals having been granted and assigned to the plaintiff without any change being made in the arrangement between the parties as to the price to be paid or the use to be made by the defendant of said bridge and with the intention on the part of the plaintiffs that payments would be made of the same amount as had been paid to the Bridge Company. The defendant denied the right of the plaintiff to collect said rental or charge since the bridge by the very grant mentioned has become a part of the state system of public roads or highways. Under Section 32p of the Acts of 1910 Chapter 116 it is expressly provided how the Conowingo Bridge shall be acquired for the purpose of making it (or a bridge to be constructed in its place) a part of the public highways of the State and the subsequent portions of that act, and the other acts kindred thereto, provide with minute detail for the establishment of the public roads system and for making the system thus established to be constructed, improved and maintained for the state at its own expense. The act also provides for the creation of public loans levied upon *all the people* to defray the cost of the construction of the roads and maintaining them, after they have been constructed and for a tax to be levied in Baltimore City and the counties of the state to meet the interest on the loans and to provide a sinking fund to retire the loans so authorized.

The public funds were to pay for the construction and maintenance of the roads without the commission being empowered to provide any tax or license fee of any sort for any of the purposes stated. The powers given under Section 37 of Article 91 of the Code and Chapter 372, of the Acts of

1912, referred to in the argument as possibly giving the right to tax seems to me are simply intended to protect the roads when constructed and to prevent anything being done to interfere with or injure the roads without the authority of the commission. This does not suggest the right or power in the commission to impose a tax for the use, occupation or rental of the roads.

It was suggested at the argument that the court should even strain to reach a conclusion that the state should have the benefit of this tax and prevent the use of the bridge in question without compensation. While the state should get the benefit of every legitimate source of income and the courts should resolve any doubt in its favor, where it is losing a possible benefit, yet citizens whether they be individuals or corporations, I rather think should have the benefit of any doubt—surely they should not be subjected to the payment of a tax for the use of a public benefit which the state has provided for all of its people, unless the law makes it clear that the power to collect and enforce has been actually given.

We have no right to consider the justness of the exercise of the power, but we must consider the existence of the right and corporate bodies must not transcend the authority delegated to them.

The right sought to be exercised must be conferred by express and unequivocal language or by fair and necessary implication. True, the right to grant licenses can be given by the legislature, but it must be expressly authorized. In the Clark case (118 Maryland) the Commission therein referred to was the source from which the license should emanate. The other cases cited are instances either of expressly delegated powers to a corporation or those in which the power exists in a corporation or in which the legislative body has directly imposed the tax or regulated the use of streets or highways.

The great public highway system was meant to be freely enjoyed by all the citizens of the state. This commission was clothed with all the power of erecting, constructing, maintaining and guarding (after construction), this system of roads, but I find nothing in the act or acts empowering it to impose or collect any tax or license fee for using the highways.

As was said in 99 Maryland, Cambridge vs. Water Co., and in the cases therein cited the power to impose license taxes or fees * * * is not inherent in municipal corporations and will never be held to exist unless it has been conferred by the state * * * either in express terms or by necessary implication."

The well reasoned cases to which I have had access all seem to hold that in order for any municipal or other corporation created by legislative enactment to tax the power so to do must be granted in terms.

Of course, if I am right in the view I have indicated, no grant from the Bridge Company to the State Roads Commission could confer the power to collect the rental sought to be collected, unless the power to collect was conferred upon the plaintiff by the legislature.

The act creating this commission after all of the details of the work of upbuilding the system of public highways in this state, provides that when the roads are completed they shall become the property of the state for the benefit of the whole public.

For the reasons indicated, I think that as soon as the grant of this bridge was consummated it became a part of the public highways system of the state and open for the use of all the citizens of the state.

Entertaining this view, the demurrer to the second count of the declaration should be sustained. I understand that the first count of the declaration is stricken out so that this demurrer being sustained carries the whole declaration.